**STATE of Missouri, Respondent,**

v.

**James D. BRIGMAN, Jr., Appellant.**

**No. WD 41341.**

Missouri Court of Appeals,
Western District.

Dec. 12, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1990.

Application to Transfer Denied
March 13, 1990.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., and John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

GAITAN, Judge.

Defendant, James D. Brigman, Jr. was convicted by a jury of forcible rape and felonious restraint, §§ 565.120 and 566.-030.2 RSMo 1986, and received a sentence of five years on the charge of forcible rape and a fine of one thousand dollars on the felonious restraint charge. The defendant appeals his conviction, contending that the trial court erred in: (1) finding sufficient evidence to support conviction; (2) permitting the admission of allegedly hearsay testimony by a State's witness; (3) giving Instruction Number Eight because it allegedly was not supported by the evidence, and (4) giving Instruction Number Seven because it allegedly failed to include an essential element of forcible rape. Judgment affirmed.

The victim testified that she traveled by train from St. Louis to Kansas City on June 13, 1987, to visit and live with her boyfriend. She arrived at the Kansas City Amtrak Station at approximately 1:30 p.m. Because her boyfriend did not know what time she was arriving, the victim proceeded to walk from the train station to the boyfriend's apartment, which was located at 40th and Main. As she walked down the street, a car pulled up and stopped beside her. A man jumped out of the vehicle, grabbed the victim and shoved her into the automobile. A second man, the driver of the car, held the victim while the first man threw her luggage into the vehicle.

The two drove the victim to a house, later identified as located at 4132 Locust in Kansas City, Missouri. During the drive to

the house, the victim began screaming; her abductors ordered her to stop or they would kill her. The two men led the victim into the house. After drinking some beer, the abductors took the victim into a bedroom. She testified that the defendant held her as the other man, identified by the victim as Shawn Schuyler, raped her. Once finished, Schuyler held her as the defendant raped the victim. Following the defendant's rape of the victim, Schuyler once again raped her. The victim stated that during the time she was in the bedroom, she was ordered to keep quiet and that the two men spoke of possessing a gun. However the victim admitted that while she believed that her two abductors had a gun, she never saw it.

After the victim was raped for a third time in the bedroom, Schuyler ordered her to put on her clothes and she was taken back to the car. The victim sat between Schuyler and the defendant in the front seat of the vehicle as Schuyler drove around town, stopped for some beer at a bar, and then continued to drive around. The victim testified that the two men told her that if she made any noise, they would hurt her. After approximately one hour, the abductors drove the victim to a field located at 12900 East 99th Street. There Schuyler pulled the victim out of the car, threw her on the ground, and raped her. Schuyler and the defendant then drove away, leaving her in the field.

The victim ran down the street until she encountered a woman, Virginia Batson, outside mowing her lawn. After hearing the victim's account of the events, Batson telephoned the police. Patrol Officer, Earl Nuckolls, responded to the call. Upon arriving at the scene, Officer Nuckolls spoke with the victim, who described the events of the afternoon. After members of Crime Scene Investigations, as well as back up officers, arrived at the scene, Officer Nuckolls proceeded to take the victim to St. Luke's Hospital. On the way to the hospital, the police officer drove her around the area of 40th and Main. The victim recognized the house at 4132 Locust. Officer Nuckolls then took her to the hospital where she was examined.

Detective Marjana Rogge of the Sex Crimes Unit investigated the case. She testified that during a search of the house at 4132 Locust, the victim's luggage was found. Detective Rogge also showed the victim a photo array which included defendant Brigman's photograph. The victim identified the defendant as one of her abductors.

At trial, Kathleen Hentges, latent fingerprint examiner for the Kansas City, Missouri, Police Department testified that the defendant's fingerprints were lifted from beer bottles found at the house on Locust. Doctor Robert Ayres, the emergency room physician who treated the victim on the day of the rape, testified that in cases of rape he generally looks for bruises or abrasion on the body or on the genitals; that during his examination of the victim, he found no bruises or abrasions. However on cross-examination, Doctor Ayres stated that in the vast majority of rape cases, very little trauma, if any, is found.

Defendant Brigman testified in his own defense, asserting that he and Schuyler had picked up the victim at her own request and that he had consensual sexual intercourse with her. The defendant further claimed that the victim and Schuyler left together by themselves, and that he did not see her after that.

### A.

In his first point, defendant contends that there was insufficient evidence to support his conviction. He argues that the testimony of the victim was uncorroborated; that her testimony was so contradictory and uncertain that it left the mind of the court clouded with doubt. We disagree.

In testing the sufficiency of the evidence to support the conviction, the appellate court must accept the State's evidence as true and give the State the benefit of all reasonable inferences, while disregarding all evidence and inferences to the contrary. *State v. LaRette*, 648 S.W.2d 96, 98 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

220

A victim's uncorroborated testimony is sufficient to support the submission of charges of rape or sodomy. *State v. Kuzma*, 751 S.W.2d 54, 58 (Mo.App. 1987). "Corroboration is not mandated unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful." *State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981). The corroboration rule does not apply where the inconsistency or even contradiction bears on a proof not essential to the case. *State v. Salkil*, 659 S.W.2d 330, 333 (Mo.App. 1983).

Defendant alleges that the victim contradicted herself as to how many children she had; that her assertion that she came to Kansas City to live with her boyfriend was contradicted by his testimony; that there was contradictory evidence of how many beers she drank or whether she changed clothes during the afternoon of the rape; that the victim's assertion that she began to walk to her boyfriend's house, carrying three suitcases estimated to have weighed approximately one hundred and twenty pounds, was unbelievable; and that her identification of various photographs of various locations after she admitted she was unfamiliar with the Kansas City area was also unbelievable. None of the alleged inconsistencies or contradictions bore upon any proof essential to the case. *State v. Edgar*, 710 S.W.2d 2, 4 (Mo.App.1986). Rather, any apparent discrepancies and their explanations went to the credibility of the witness, which is an issue for the jury. *State v. Harris*, 620 S.W.2d at 354.

Evidence presented at trial indicated that the defendant's fingerprints were found at the Locust street address, along with the victim's luggage. The victim identified the defendant as one of her abductors. Virginia Batson, Officer Nuckolls, and Doctor Ayres testified as to the victim's distraught emotional condition. The victim testified about the threats made to her by the two men. We find that there is nothing in the victim's testimony so contradictory or uncertain as to make the testimony doubtful as to the essential proof of the offense. There was sufficient evidence to have submitted the cause to the jury and to support its verdict. Defendant's first point is denied.

B.

Defendant next contends that the trial court erred in admitting hearsay testimony of Officer Nuckolls. The officer testified that when he arrived at the Batson residence, he found the victim there, visibly shaken and crying. Over the objection of defense counsel, Officer Nuckolls gave a brief recitation of the victim's statements to him about what had just occurred.

The Court's review in matters of admission of evidence must focus on prejudice and not mere error. *State v. Tyler*, 676 S.W.2d 922, 924–25 (Mo.App.1984). The general rule is that it is impermissible for an officer to testify as to a victim's extrajudicial statements, *State v. Nimrod*, 484 S.W.2d 475, 479 (Mo.1972). However, various exceptions mitigate the general rule. Such testimony has been found to be admissible to show the course of an investigation, *State v. Hill*, 735 S.W.2d 117, 118 (Mo.App.1987); a victim's statement that she has been raped is admissible as an excited utterance, *State v. Wilson*, 719 S.W.2d 28, 33 (Mo.App.1986); *see also, State v. Griffin*, 662 S.W.2d 854, 858 (Mo. banc 1983), *cert. denied*, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984); and cumulative testimony is considered non-prejudicial if the victim is an in-court witness, subject to cross-examination and the testimony of the court witness is consistent with the hearsay statements of the same witness, *State v. Tyler*, 676 S.W.2d at 925.

Defendant cites *State v. Seever*, 733 S.W.2d 438, 441 (Mo. banc 1987), for the proposition that testimony presented in multiple forms creates an undue advantage. In *Seever* a videotaped statement by a witness was shown to the jury, after which the witness took the stand. The Missouri Supreme Court found that such broad duplication was improper enhancement and rehabilitation, thereby creating an undue advantage. We do not find *Seev-*

*er* controlling in this case. Officer Nuckolls' testimony regarding the victim's statements was brief and concise, adding nothing of substance to her account.

Officer Nuckolls' testimony was admissible under any one of the above stated authorities and we find that defendant was not prejudiced. Defendant's second point is denied.

### C.

◼ Defendant contends in his third point that the trial court erred in giving instruction Number Eight, Count III, Felonious Restraint, because there was no evidence that the victim was exposed to a substantial risk of serious physical injury. Specifically, the defendant argues that threats, the possibility of the presence of a gun, and rough treatment do not constitute risk of serious physical injury.

An instruction must be based upon substantial evidence and reasonable inferences. *State v. Beatty*, 617 S.W.2d 87, 91 (Mo.App.1981). In determining whether sufficient evidence exists for an instruction, we view all facts and inferences in the light most favorable to the State, and all adverse inferences and evidence will be disregarded. *State v. Reed*, 670 S.W.2d 545, 547 (Mo.App.1984).

◼ The phrase "serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." *State v. Blockton*, 703 S.W.2d 500, 504 (Mo.App.1986). The use of a weapon is not required to prove the charge of felonious restraint. *State v. Terrell*, 751 S.W.2d 394, 396 (Mo.App.1988). Threat of injury from a weapon is sufficient to substantiate the charge. *State v. Carroll*, 755 S.W.2d 322, 324 (Mo.App. 1988).

The victim testified that her abductors threw her in the automobile, threatened to kill her if she screamed, forcibly held her down to rape her, told her they had a gun, and to keep quiet or they would hurt her. Whether or not the victim suffered serious physical harm is irrelevant. *See State v. Terrell*, 751 S.W.2d at 395. The State was required to prove that the defendant restrained the victim as to interfere substantially with her liberty and that such restraint exposed her to substantial risk of serious physical injury. We find that sufficient evidence was presented to support Instruction Number Eight and the defendant's conviction of felonious restraint.

### D.

◼ In defendant's final point, he contends that the trial court erred in giving Instruction Number Seven, Count II, Forcible Rape, in that the instruction did not require the jury to find that both the defendant and Schuyler had raped the victim. The defendant premises his argument on a discrepancy between the Information for Count II and Instruction Number Eight.

The Information for Count II is as follows:

### II: FORCIBLE RAPE—FELONY

The Prosecuting Attorney of the County of Jackson, State of Missouri, charges that the *defendants*, Jamie Brigman and Shawn K. Schuyler, in violation of Section 566.030, RSMo, committed the felony of Forcible Rape, punishable upon conviction under Section 566.030.2 by life imprisonment or a term of years not less that five years, in that on or [before] June 13, 1987, in the County of Jackson, State of Missouri, the defendants had sexual intercourse with [the victim], to whom defendants were not married, without the consent of [the victim], by the use of forcible compulsion, to-wit: forcible rape by Shawn K. Schuyler at 12900 East 99th Street.

(Emphasis added.) The information generally conformed to MACH–CR 20.02, Rape.

Instruction Number Seven is as follows:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 13, 1987, in the County of Jackson, State of Missouri, the codefendant, Shawn K. Schuyl-

er had sexual intercourse with [the victim] at 12900 East 99th Street, Kansas City, Missouri, and

Second, that the co-defendant did so without the consent of [the victim] by the use of forcible compulsion, and

Third, that defendant or Shawn K. Schuyler was not then married to [the victim],

then you are instructed that the offense of forcible rape has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that forcible rape, the defendant, Jamie Brigman acted together with or aided Shawn K. Schuyler in committing that offense, and

Fifth, that defendant and Shawn K. Schuyler consciously disregarded a substantial and unjustifiable risk that sexual intercourse was being accomplished without the consent of [the victim] by forcible compulsion, and such disregard constituted a gross deviation from the standard of care which a reasonable person would have exercised in the situation,

then you will find the defendant guilty under Count II of forcible rape.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Consent or lack of consent may be expressed or implied. Assent does not constitute consent if it is induced by force or duress. "Forcible compulsion" means physical force that overcomes reasonable resistance.

If you do find the defendant guilty under Count II of forcible rape, you will assess and declare the punishment at:

1. Life imprisonment, or

2. Imprisonment for a term of years fixed by you, but not less than five years.

The information conformed to MAI–CR3d 320.02.1B, Forcible Rape, modified by MAI–CR3d 304.04, Parties: Defendant's Responsibility for the Conduct of Another.

The defendant argues that the information charges both defendant Brigman and Schuyler of raping the victim at 12900 East 99th Street, whereas the instruction merely required the jury to find that the defendant aided Schuyler in committing the offense, thereby creating a fatal variance between the information and instruction.

■ "[A] rape may be the result of concert of action aided and abetted between perpetrators." *State v. Pierson*, 610 S.W.2d 86, 90 (Mo.App.1980). One who aids or encourages commission is guilty of that offense. *State v. Gannaway*, 649 S.W.2d 235, 39 (Mo.App.1983). *See also, State v. Presley*, 694 S.W.2d 867, 870–72 (Mo.App.1985). An information may charge a defendant either as a principal or as an aider and encourager with the same legal effect. *State v. Newbold*, 731 S.W.2d 373, 385 (Mo.App.1987).

It is questionable whether or not a variance existed between the information and the instruction. A review of the entire information indicates that defendant Brigman was charged in Count II with the crime of forcible rape in that he aided and abetted Schuyler in the rape of the victim at the field on 12900 East 99th Street. Instruction Number Eight comported with the intent of the information. A review of the record, including opening and closing statements, shows that the State and the defendant acted in conformity with this interpretation of the information; the jury was informed and understood that Count II charged the defendant with forcible rape in that he aided Schuyler in the rape of the victim.

■ However, even if a variance existed, it is not fatal unless a charge, new and distinct from the offense alleged, is submitted to the jury. *State v. King*, 747 S.W.2d 264, 275 (Mo.App.1988); *see also State v. Martin*, 633 S.W.2d 80, 82 (Mo. banc 1982). Defendant Brigman was found guilty of the offense of forcible rape. He was charged with that same offense. Therefore, defendant was not prejudiced.

■ Defendant also contends that the instruction was erroneous, because the information stated that "defendants had sexual intercourse" with the victim, yet an

aggravated rape instruction pursuant to MAI–CR3d 230.021A was not given.

We find defendant's argument without merit. The information in Count II, while referring to the defendants, stated that the actual rape was committed by Schuyler. The information gave the term of imprisonment as not less than five years. This clearly refers to a class B felony of forcible rape. Aggravated rape, a class A felony, is committed when the defendant subjects the victim to "deviate sexual intercourse with more than one person." § 566.030.3 RSMo 1986. The information did not charge the defendant with forcing the victim to have sexual intercourse with more than one person, but rather that Schuyler raped the victim with the aid of Brigman. The defendant was charged with a class B felony. Modified instruction MAI–CR3d 320.021B was the correct instruction and therefore, no error occurred. *State v. Snyder*, 748 S.W.2d 781, 785 (Mo.App.1988). Point denied. Judgment affirmed.

All concur.